CMX: USAO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * Criminal No. JFM-14-0590 |
| v. | * |
| SAJID MAHMOOD, | * Conspiracy to Defraud the United |
| a/k/a Shawn Chudhary, | * States, 18 U.S.C. § 371 |
| | * Unlawful Export of Defense Articles, |
| Defendant | * 22 U.S.C. § 2778 |
| | * Unlawful Export of Goods, |
| | * 50 U.S.C. § 1705 |

*****

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

## COUNT ONE

### Export Laws and Regulations

1. The Arms Export Control Act (AECA), specifically, Section 2778 of Title 22, United States Code, authorizes the President of the United States to control the export of arms, munitions, and other defense articles by designating said items and promulgating regulations with respect to their export. The items so designated are set forth on the United States Munitions List (USML).

2. The AECA and its implementing regulations, the International Traffic in Arms Regulations (ITAR) (22 C.F.R. Parts 120-130), require a person to apply for and obtain an export license from the Department of State, Directorate of Defense Trade Controls (DDTC), before exporting defense articles from the United States. In the export license application, known as a Form DSP-5, the exporter must identify the nature of the defense articles to be exported, the end-

recipient, and the purpose for which they are intended. The AECA and the ITAR remained in full force and effect throughout the time frame of this Indictment.

3. Category I of the USML designates certain firearms and assault weapons, and related components and technical data, as defense articles subject to the ITAR. During the time frame of the events set forth in this Indictment, the following firearm parts and accessories associated with AR-15 style semi-automatic rifles were designated defense articles under Category I of the USML and prohibited from export from the United States absent an export license from the DDTC: a .223 caliber rifle lower receiver; a .223 caliber rifle bolt carrier; a .223 caliber 10 round magazine; and a .223 caliber 100 round magazine.

4. The International Emergency Economic Powers Act (IEEPA) (50 U.S.C. §§1701-1706) gives the President the power to regulate exports and other international transactions in times of national emergency, as triggered by national security, foreign policy or economic concerns stemming from the unrestricted access by foreign parties to United States goods and technologies. By virtue of the President's delegation of his authority under the IEEPA, the Department of Commerce, Bureau of Industry and Security (BIS), administers the Export Administration Regulations (EAR) (15 C.F.R. Parts 730-774) governing the export of goods and commodities.

5. Depending upon an item's technical characteristics, destination, end-user, or end-use, certain commodities may not be exported unless authorized by the BIS through issuance of an export license. Items controlled for export are categorized on the Commerce Control List in the EAR and are identified by an Export Control Classification Number (ECCN). The IEEPA and the EAR remained in full force and effect throughout the time frame of this Indictment.

6. Certain optical sighting and laser pointing devices for firearms, as classified under

ECCN 0A987, are controlled for export from the United States to Pakistan for reasons of crime control. During the time frame of the events set forth in this Indictment, the following firearm parts and accessories suitable for use on AR-15 style semi-automatic rifles were prohibited from export to Pakistan absent issuance of an export license from the BIS: an Aimpoint CompM3 optical gun sight, and a TLR-2 LED rail mounted flashlight with laser.

7. The ITAR and EAR also prohibit transactions that seek to evade or avoid said regulations by making false or misleading statements, or concealing a material fact, in documents relating to an export of defense articles or goods, such as air waybills, bills of lading, sales or shipping invoices/lists, and Shipper's Export Declarations (SED). The SED, which identifies the nature and value of the item being exported, its true and final destination, and the identity of the individual or entity seeking to export the item, is required if, among other things, the value of the item to be exported exceeds $2,500, and/or if the item is being exported pursuant to an export license. The filing of the SED would alert the Department of Commerce to the export and enable it and other agencies to track the export and ascertain compliance with licensing and other export requirements and restrictions.

### The Defendant and Coconspirators

8. At all times material to this Indictment, defendant **SAJID MAHMOOD, a/k/a Shawn Chudhary,** a Pakistani national in the United States on an expired visa, resided in Upper Marlboro, Maryland, with his coconspirators, **Kamran Ashfaq Malik** and **Waleed Aftab**. **MAHMOOD** worked with **Aftab** at a pizza shop in Upper Marlboro owned and operated by **Malik.**

9. At no time relevant to this Indictment did **MAHMOOD, Malik,** or **Aftab** apply for, receive, or possess licenses from the Department of State or the Department of Commerce to

export defense articles or goods of any description.

### The Charge

10. Beginning in or about July 2012, and continuing to in or about March 2014, in the District of Maryland, the Commonwealth of Virginia, and elsewhere,

**SAJID MAHMOOD, a/k/a Shawn Chudhary,**

did knowingly and intentionally combine, conspire, confederate and agree with **Kamran Ashfaq Malik** and **Waleed Aftab,** and with others known and unknown to the Grand Jury, to defraud the United States, specifically the Department of State and the Department of Commerce, by interfering with, impeding and obstructing, through deceit, craft, trickery, and dishonest means, lawful government functions, that is, the enforcement of laws and regulations controlling the export and supply of defense articles and goods from the United States.

11. The object of the conspiracy was to export firearms and related accessories to Pakistan by evading export laws and regulations through concealment, deceit and other means.

12. It was part of the conspiracy that members of the conspiracy utilized false names and addresses on purchase and shipping documents in order to facilitate and conceal their unlawful exports to Pakistan.

13. It was further part of the conspiracy that members of the conspiracy falsely identified, or "manifested," on shipping receipts the firearms and related accessories contained in the packages they sought to unlawfully export, and falsely declared the contents to be of nominal value.

14. It was further part of the conspiracy that when **Malik** was in Pakistan, **MAHMOOD** would arrange for various firearms parts and accessories to be unlawfully exported to Pakistan per **Malik's** direction, and obtain **Aftab's** assistance in completing those

shipments.

15. It was further part of the conspiracy that **Malik** utilized the bank account and Virginia residence of an associate to conceal his Maryland residency and facilitate his purchases in the United States of firearms, parts and accessories for subsequent shipment to Pakistan.

**Overt Acts**

16. It was further part of the conspiracy that in order to effect its unlawful objectives, members of the conspiracy performed, participated in, and committed certain overt acts in the District of Maryland and elsewhere, including the following acts on or about the dates listed below.

17. On July 29, 2012, **Malik** purchased a Colt Sporter M-4 semi-automatic rifle (a type of AR-15 style semi-automatic rifle), serial number SP514438, from a federally licensed firearms dealer in Lorton, Virginia.

18. On July 31, 2012, **Malik** caused images of two male associates posing with two AR-15 style semi-automatic rifles to be captured on his cellular telephone at a location at or near the Maryland residence he shared with **MAHMOOD** and **Aftab**. One of the rifles was equipped with an optical gun sight and rail mounted flashlight with laser, while the other was equipped with a collapsible butt stock.

19. On September 29, 2012, **Malik** caused images to be captured on his cellular telephone, at a location at or near the Maryland residence he shared with **MAHMOOD** and **Aftab**, of AR-15 100 round dual drum magazines he had previously purchased from firearms accessories dealers in the United States.

20. On October 9, 2012, **Malik** caused a shipping outlet in Bowie, Maryland, to ship a package containing firearms parts and accessories to Lahore, Pakistan, under a fictitious return

address and falsely manifested as "lids, plastic holder and empty bags."

21. On October 22, 2012, **Malik** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to Lahore, Pakistan, under a fictitious return address and falsely manifested as "thread holder."

22. On October 24, 2012, **Malik** caused images to be captured on his cellular telephone, at a location at or near the Maryland residence he shared with **MAHMOOD** and **Aftab**, of AR-15 100 round dual drum magazines he had previously purchased from firearms accessories dealers in the United States.

23. On October 31, 2012, a few days after **Malik** had departed the United States for Pakistan, **MAHMOOD** and **Aftab** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to **Malik** in Lahore, Pakistan, under a fictitious name and return address and falsely manifested as "metal chain."

24. On November 6, 2012, **MAHMOOD** and **Aftab** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to **Malik** in Lahore, Pakistan, under a fictitious name and falsely manifested as "empty bags."

25. On November 13, 2012, **MAHMOOD** and **Aftab** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to Lahore, Pakistan, under a fictitious name and falsely manifested as "plastic rope holders."

26. On November 19, 2012, **MAHMOOD** and **Aftab** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to Lahore, Pakistan, under a fictitious name and falsely manifested as "plastic rope holders."

27. On November 21, 2012, **MAHMOOD** sent a text message to **Malik's** cellular telephone that contained the tracking number for the November 19, 2012, shipment referenced in

paragraph 26.

28. On November 26, 2012, **MAHMOOD** and **Aftab** caused the Bowie shipping outlet to ship a package containing firearms parts and accessories to Lahore, Pakistan, under a fictitious name and falsely manifested as "plastic cup holders and door springs." The package was screened on arrival at the airport in Dubai, United Arab Emirates, on November 28, 2012, and found to contain numerous firearm parts and accessories, including the following export-controlled items: the lower receiver of the Colt M-4 semi-automatic rifle, serial number SP514438, previously purchased by **Malik** on July 29, 2012; the lower receiver of a Rock River LAR-15 semi-automatic rifle, serial number CM68208; two .223 caliber rifle bolt carriers; two .233 caliber 10 round magazines; an Aimpoint CompM3 optical gun sight; and a TLR-2 LED rail mounted flashlight with laser.

29. On November 30, 2012, **MAHMOOD** sent a text message to **Malik's** cellular telephone containing the tracking number for the November 26, 2012, shipment referenced in paragraph 28.

30. On March 6, 2014, **Malik** attempted to cause the Bowie shipping outlet to ship a package containing firearms parts and accessories to Lahore, Pakistan, falsely manifested as "screw holders and metal screws." The package was intercepted by Immigration and Customs Enforcement agents and found to contain twenty-eight AR-15 bolt carriers controlled for export from the United States.

18 U.S.C. § 371
22 U.S.C. § 2778
22 C.F.R. §§ 121.1, 123.1, 127.1, 127.2
50 U.S.C. §1705
15 C.F.R. §§ 736.2, 764.2
15 C.F.R. Part 774, Supp. 1
15 C.F.R. Part 738, Supp. 1

## COUNT TWO

## Unlawful Export of Defense Articles

1. The allegations set forth in paragraphs 1-3, 7-9, 11-18, and 28-29 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about November 26, 2012, in the District of Maryland,

**SAJID MAHMOOD, a/k/a Shawn Chudhary,**

did knowingly and willfully export and cause the exportation of firearm parts and accessories designated as defense articles in Category I of the United States Munitions List, to wit: a .223 caliber rifle lower receiver, serial number SP514438; a .334 caliber rifle lower receiver, serial number CM68208; two .223 caliber rifle bolt carriers; and two .223 caliber 10 round magazines, from the United States and destined for Pakistan without having first obtained the required licenses or authorizations from the Department of State, Directorate of Defense Trade Controls.

22 U.S.C. § 2778
18 U.S.C. § 2
22 C.F.R. §§ 121.1, 123.1, 127.1

8

## COUNT THREE

### Unlawful Export of Goods

1. The allegations set forth in paragraphs 4-9, 11-16, and 28-29 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. On or about November 26, 2012, in the District of Maryland,

**SAJID MAHMOOD, a/k/a Shawn Chudhary,**

did knowingly and willfully export and cause the exportation of certain goods, to wit: an Aimpoint CompM3 optical gun sight and a TLR-2 LED rail mounted flashlight with laser, from the United States and destined for Pakistan without having first obtained the required licenses or authorizations from the Department of Commerce, Bureau of Industry and Security.

50 U.S.C. § 1705
18 U.S.C. § 2
15 C.F.R. §§ 736.2, 764.2
15 C.F.R. Part 774, Supp. 1
15 C.F.R. Part 738 Supp. 1

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date 12/16/14